We'll hear oral argument this morning is number 05-1510, Revolution Eyewear v. Aspex Eyewear. Let's see. Mr. Trojan? Yes. Good morning. Good morning. Just want to confirm you've got five minutes for rebuttal, correct? That's correct. Okay. You can start whenever you're ready. Thank you. Please the court. My name is Joseph Trojan, counsel for the appellant, Revolution Eyewear. The first issue I'd like to take up is the issue of jurisdiction and especially the issue of whether there was a motion non-pro-tunk in the district court that amended the judgment. Since we're talking about jurisdiction and I appreciate you're starting with that, before we get into the non-pro-tunk aspect, I have kind of another question or cloudiness on jurisdiction. The piece of this case that involves validity or invalidity, that's before the district court currently, correct? I don't think that it's formally before it yet. I don't think the mandate's been spread yet. But it's on its way. It has. The mandate has been spread. Oh, it has. The mandate issued April 20th. Oh, okay. So it's before her. We've had a flurry of these cases in the past two years and I'm sure you're familiar with Nystrom and some of our other cases. When we get a case up here and there's a piece of that case remaining with the district court in the absence of her saying dismissed without prejudice or granting a 54B, we typically say go home. We're not going to do these cases piecemeal. And since your case, a piece of it is before her and you've got a piece of it coming up here and why is that different than the normal process we would follow with just saying uh-uh. Get the whole case out of there before you come up here with pieces of it. Because the part of it that remains is an issue that's been fully litigated. The part of it that remains, you mean the part of it that's up here now? It remains here. It's an issue that's been fully litigated that goes to the very heart of the case. So what? That's always the case. Well, actually... I mean, you have a full litigation of invalidity, right? Of invalidity. Right. And if the unenforceability motion had not been, a summary judgment motion had not been mooted, had not been dismissed as moot, right, there would have been a Nystrom and Trex problem up here with your original appeal. That's correct. Totally correct. I mean, we do this all the time. In fact, we've even thought about sanctioning people who bring up here half judgments because it's a nuisance and a waste of time. Now, it isn't quite, I don't think you all are in that posture because you came up here with a half of the case the first time around that was legit because the other half of the case had been dismissed as moot, right? Correct. Now, the problem you've got now is that you've got half the case went back, the mandate spread, it's in the U.S. District Court, it's an invalidity issue, it's just sitting down there. And so it strikes me as absolutely no different. You've got a half a case up here now, there's no 54B. If your judge wants the 54B, the inequitable conduct, that's just fine. Okay. Provided that there's a judgment of inequitable conduct, which there isn't at the moment. That's correct. Somebody needs to go to the U.S. District Court judge and say, I mean, assuming that there's no jurisdiction here for this one right now, because you've got a live issue, half the case is alive downstairs, somebody needs to go to the District Court judge and say, judge, if what you meant to do was either nunk-pro-tunk, which under the Ninth Circuit Law you couldn't have meant to do, because the furthest thing from your mind when you entered the invalidity order was getting the hell rid of the unenforceability. Nunk-pro-tunk strikes me as a no-brainer, it can't work. But if she wants to say, I basically meant to treat my unenforceability discussion as though I had suus bodi resuscitated the summary judgment motion for unenforceability with the consent of the parties, and we litigated that, and I found a judgment of unenforceability, right? Then she'd have a peg for a prevailing party to hang an attorney's fee on. So how can you possibly tell us that you have got a final judgment in a case for purposes of appeal this morning? If you view it, jurisdiction in that light is a procedural issue, and you focus on the procedural posture of the case before the court as it now stands, then the court is correct. In our letter brief, we just pointed out that the court's jurisdictional authority is broader than the procedural posture that currently exists in the case. That the issue of inequitable conduct was fully litigated and improperly appealed, and if those two appeals had been consolidated, the court would have been required to hear that issue. But they were just separated by a few months, and the timing of it really should... Well, I mean, it's perfectly clear what happened. The trial judge decided that she'd rather go off on invalidity. She went off on invalidity, and the trial judge said, you know something? The Federal Circuit just always is getting very upset with half appeals, and so I don't need to adjudicate inequitable conduct. It's kind of messy stuff. I'll dismiss that. Bang. It's gone. Then you have an appeal, and you come up here, right? Correct. And then the lawyers say to themselves, hmm, we love money. We'd like to get some attorney's fees. We're a prevailing party on invalidity. At least you were as of then. So somebody pitches the motion for attorney's fees, right, based both on the invalidity case having been frivolous and on the theory that inequitable conduct's been engaged in. But she hasn't litigated inequitable conduct. She's got to do that, and that's what happened. What kind of a litigation was that on inequitable conduct, Mr. Trojan, because it was a curious proceeding, because in the briefs, both parties in talking about inequitable conduct say the standard of review is clear error for the factual component of the inequitable conduct determination. Both you and Mr. Nicodemus say that. But clear error is the standard of review that follows when there's been a trial. And there was no trial here on inequitable conduct. It was sort of a – what was it? It seemed like sort of a quasi-summary judgment proceeding. Yeah. I would have thought you'd been jumping up and down and saying summary judgment was improper. It – the problem we were presented with is that it's not improper for them to raise the issue of inequitable conduct within the context of the motion for attorney's fees. So that part of it, it seemed like the issue should have been – But you're not saying there should have been a trial. I would have thought you would have said, gosh, we should have had a trial on this issue, fact issues. I believe in our briefs we have said that there should be – I mean, clearly on the issue of intent, there needs to be a trial. Yeah, I mean, you want the victory on the merits. There's no request for a vacate and remand in the briefs. You want the reversal of the attorney's fees, not a vacate. Well, on the merits, I think the merits are extremely clear, but I think we haven't overcome this. What did the parties think they were doing? The other side pulls the trigger on the attorney's fees, right? Correct. And they say, we want our attorney's fees, Your Honor. And at that stage in the game, they had a judgment on invalidity. Correct. So they were a prevailing party. Correct. And they say, well, in case you don't buy that, we also think we're entitled to an attorney's fees based on a prevailing party on inequitable conduct. But there had been no finding of that at all. What did you think you were doing on the inequitable conduct side of the case? Did you think that their summary judgment motion for unenforceability had been reinstated? No. It was uncharted territory for us because we'd never seen it. Well, you know what you do when it's uncharted? You get it charted. You say to the judge, what on earth are you doing? You're going to sue us, Bonnie, resuscitate the other side's summary judgment motion, in which case we object. Because she had dismissed the summary judgment counterclaim. I mean, she had dismissed the inequitable. There was no inequitable conduct. It wasn't in the universe anymore. And that was certainly how we thought it should be. But the case law does not limit their reasons for asserting a claim to attorney's fees. No, they're certainly entitled. Anybody can come in and say, Joseph Moe engaged in inequitable conduct. Based on that, if I can prove it, I'm entitled to attorney's fees. Now, they had a legitimate hook for attorney's fees in the form of the invalidity judgment. That had been fully adjudicated. They were prevailing party, right? And so their alternative ground for attorney's fees was inequitable conduct if they could get a judgment in their favor on that ground so that they could say they were a prevailing party, right? And so clearly, when the trial judge, I don't know at what stage she said, I'm not going to rule in favor of attorney's fees on the invalidity side of the case. I don't know whether she did that to you earlier than when you got her opinion. But it had to be clear that something, there was going to be something going on in inequitable conduct. Because either a trial or a summary judgment can't be anything else, right? Correct. And actually, all of that occurred after the first case was already on appeal. The notice of appeal was already filed, and she was divested of jurisdiction on the summary judgment issue by the time she ruled on the motion for attorney's fees. And what's the state of the record on the inequitable conduct issue? Were there affidavits that had been submitted pro and con on the summary judgment before it was withdrawn? Just like the summary judgment, she had no hearing on the attorney's fees issue either. She's not heard from any witnesses whatsoever. Well, there must have been some affidavit somewhere because there's some allegation that the inventor said, I thought this and I thought that about the scope of the claim. Correct. And those are declarations that were originally submitted as part of that. Was there anything submitted? Was there any deposition testimony submitted, Mr. Troy? There was deposition testimony submitted, but that went to the original merits of the – well, yeah, there was deposition testimony submitted. Was there deposition testimony relative to the question of inequitable conduct? There was deposition testimony on one issue relating to inequitable conduct, and that had to do with whether Mr. Zellman – which embodiment he felt was – Was there deposition testimony relating to the issue of intent? No. Okay. Okay, thank you. We'll give you your full rebuttal. It's showing you five minutes. We'll hear from the other side. Mr. Nicodemus? May it please the Court. Your Honor, on this jurisdictional issue, the state of the record was that Judge Cooper decided this based on all of the summary judgment papers. That's exactly what she did. That was all the evidence before her, and it included deposition testimony. It included the case law. There were no affidavits submitted by the inventor. He didn't submit an affidavit or a declaration showing a plausible explanation. Was there any conversation? I mean, I don't know how they work things out there in California in the byplay between the lawyers, the judge's clerk, the judge. You made a motion for attorney's fees. That's correct, Your Honor. You were clearly a prevailing party on the invalidity side of the case. That's correct. Because you won. I mean, you were then. I mean, it turned out that that's been vacated. You may later still be. Okay. So you hang your hat there, and you say, oh, by the way, we're also entitled to attorney's fees because we think the other side engaged in equitable conduct. That's correct. So she rules no. She disagrees with you that she doesn't think the invalidity case was frivolous or whatever so as to give you attorney's fees on that ground, and she turns to inequitable conduct. Was there any conversation between you and her clerk or the judge saying, judge, we understand what you've done is to, notwithstanding the docket entry that shows that our motion for summary judgment on enforceability was dismissed, you've reinstated it? There was no conversation. What we did was submit all of our summary judgment papers as the evidence of inequitable conduct to support the attorney's fee award. And the other side submitted whatever it had? Yes, which was a closed record. It was all the summary judgment motions. There were no new affidavits. There were no new declarations. In fact, in the original summary judgment papers, the inventor submitted no new affidavits or declarations explaining himself. Yes, there was deposition testimony of the inventor showing that he can— And nobody thought once they received the district court's order granting the attorney's fees to sort of go to the clerk or the judge's law clerk or something and say, can you enter a judgment of unenforceability, you know, on the record? I did not. Our letter was clear, and I can understand, Your Honor, the issue of no protunque. I think no protunque. I don't think you want to go back and tell the judge that she's no protunque. I mean, I was reading in Sumner the case you cite to us. No protunque is limited to making the record reflect what the district court actually intended to do at the earlier date. I understand. And we know at the earlier date she intended to dropkick unenforceability into the seat. Because she dismissed the counterclaim. She did. But the one thing is clear is that she decided, in connection with the attorney's fees motion, she decided an equitable conduct on the merits because what she used was all the summary judgment. Well, I understand what you think she said. But, I mean, if this case went back, I would hope both of you would have no trouble going to the judge and saying to the judge, not we know that you're no protunque. But it would be useful to have a judgment in the record. Well, I would imagine if this case went back, I know what I would ask her to do is to decide on the merits, just go through the formalities of what you have to do. But she did decide this on the merits. Well, it's perfectly clear that she rendered a decision of unenforceability. There's no question about that. That's correct. But is it a determination? Is it a judgment? There's nowhere the words I adjudge revolution to have engaged in equitable conduct. No, she said the patent is unenforceable. She said the patent is unenforceable, and she granted us attorney's fees because she said we were forced to defend a litigation based on an unenforceable patent. Now, the attorney's fees that you were granted, if I'm not mistaken, I can't remember the exact number of dollars. $250,000. My recollection is that a substantial number of those dollars were generated in connection with the invalidity side of the case. I would say it was 50-50. Well, whatever it was, whatever it was. Those dollars have got wings on them, right? They're gone. They're gone unless there were two alternate grounds for our summary judgment motion on invalidity. One had to do with if the claim construction went one way, one had to do if the claim construction went the other way. Yeah, I mean, the case has gone back, and presumably there will be invalidity challenges that will be mounted. What I'm saying, Your Honor, is on the invalidity, now the judge has to decide the other prong of it. She didn't decide. Right, but my point is the exact number of dollars that the other side has ordered to pay to you is flawed at the moment. I don't know that it's flawed, and I don't know that they have wings because she could still decide. Right. She could still decide that her alternate ground for invalidity was correct. But the point is, Mr. McGinn, things are very much in flux. Whether the computation is correct as of the moment is subject to question. Agreed. And the judge ought to understand that, too. I mean, if this case goes back, I don't know how many cases the judge decides that come up here, but we ought to try to dot the i's and cross the t's. On the basic question that Judge Prost raised in her discussion with Mr. Trojan, do you agree that we don't have a final judgment now? I can't see how this judge could have amended her judgment to include the attorney's fees and not included the underlying findings of inequitable conduct. No, but I mean, what Judge Prost was saying, I think, and what gives me some concern is now you have back in the district court, since the mandates, there was no, we decided the invalidity issue. We vacated and remanded. There was no petition for rehearing, and the mandate is issued. So now the status of things, as I see it in the district court, is that the district court is there with the validity issue back before it. I'll say this, Your Honor. If the court does not agree with our noom pro toom position, that's the only position we took in the letter, there is no final judgment. Well, I think what will any decision that was issued in this case, hopefully from this court, will, number one, make a ruling on the jurisdictional issue and will sort of reflect the discussions here today so that there's guidance for the court below and the parties. Understood, Your Honor. Let me be clear. I had earlier said when your adversary was up that we see, we've seen a whole lot of these half appeals over the last few years where basically what had happened was, as you know, in patent cases, the parties want to shape up something to bring it up on appeal. So you have a markman hearing, a claim construction, summary judgment, either infringement or non, ditch the invalidity counterclaims and come on upstairs and find out. In a lot of these cases, they weren't cleaning up the records, so there were all these pending counterclaims of invalidity hanging around, so there was clearly no final judgment. So we got steamed up. We actually threatened to sanction somebody. I just wanted to say to both of you I didn't mean to suggest in any way, shape, or form that this gets anywhere near a sanctional situation because the jurisdiction here got shanghaied, in your judgment, by our decision in the other half of the case.  Every once in a while, at the end of the week, I get a little carried away, and I just didn't want to suggest that. I think it's the view of the panel that the parties should hold off on any further proceedings in the district court of any kind until we issue our decision. Because through no fault of yours, obviously, you got caught in the situation where you had a case up here, action was taken in the district court, and then we sent the case back, and that sequence of events has put us in the circumstance we're in today. So in light of what's happened through no fault of yours at this point, I think the panel would say that the best course is for you all to hold off on doing anything more in the district court until we issue our decision so that we're not in the situation of issuing a decision in this case, and at the moment we issue a decision, something's happened in the district court. Do you all understand what we're saying? I understood, Your Honor. I know I made a long trip, Mr. Trojan made even a longer trip, and I'm going to stay in the on-deck circle until I hear from you all. It also might be a little easier from your perspective if this court is going to suggest to the district court some steps that the court might take to perfect the record. It might be a little nicer if it's coming from us instead of from you. Of course. You have to stand in front of the judge. I appreciate that. Of course. Thank you, Your Honor. So you're covered now if the district court at some point issues before our opinion issues, you know, issues a call and says you can honestly say the court of appeals has said wait. Thank you, Your Honor. Thank you, Mr. Dima, Nick Dima. Thank you, Mr. Trojan. Case is submitted. This is not jar and dice against jar and dice. You won't be, you know, waiting forever for a decision from us.